**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Rose, | No. CV-17-04759-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Richard Rose seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits under the Social Security Act (the "Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure. For the following reasons, the Court vacates the Commissioner's decision and remands for further proceedings.

## I. Procedural Background

On April 2, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Act. (Tr. 65.)[1] Plaintiff alleged disability beginning on April 2, 2014. (*Id.*) After denial on initial review and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 65.) After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the

---

[1] Citations to "Tr." refer to the administrative record filed at docket 17.

Act. (Tr. 65-82.) The Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**II.   Administrative Record**

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's impairments. The record also includes several medical opinions.

    **A.   Medical Treatment**

On February 4, 2014, Plaintiff was injured at work and went to the emergency room. (Tr. 97-98, 314.) Plaintiff complained of a spasm in his lumbar spine that was worse with movement and better with rest. (*Id.*) On examination Physician Assistant ("PA") Mary Matherly found tenderness to palpation in the bilateral lumbar paraspinal muscles and into the bilateral SI joints and significant decreased range of motion secondary to pain. (Tr. 315.) PA Matherly diagnosed Plaintiff with acute chronic lumbar pain. (*Id.*)

On February 24, 2014, Plaintiff sought treatment at the Core Institute and complained of low back pain with spasms and right leg pain. (Tr. 320.) On examination of Plaintiff's lumbar spine, Ali Araghi, D.O., found decreased range of motion due to pain, tenderness to palpation, and painful facet loading. (Tr. 322.) Dr. Araghi noted that a June 2013 MRI of Plaintiff's lumbar spine showed "central disc protrusion at L4-5 with pressure on the bilateral L5 nerve roots and moderate central canal stenosis at L4-L5." (*Id.*) Dr. Araghi prescribed Naproxen and Flexeril and ordered a lumbar MRI. (Tr. 323.) The MRI, performed on March 7, 2014, showed "interval increase in central focal disc extrusion at L4-5," "severe central canal stenosis at L4-L5 with impingement upon the transiting nerve roots," "right paracentral focal disc protrusion at L5-S1 which . . . contacts the transiting right S1 nerve root," and "right lateral disc protrusion at L2-L3 which may contact the exiting right nerve root." (Tr. 344.)

On March 5, 2014, Plaintiff saw Michael Winer, M.D., regarding his low back pain. (Tr. 417.) On examination, Dr. Winer found full range of motion in the cervical spine with

"minimal tenderness." (Tr. 418.) He also observed "lumbar tenderness with right sciatic notch tenderness," decreased lumbar range of motion with pain, pain with extension and side bending, positive straight leg test positive bilaterally, and decreased sensory distribution at L5. (Tr. 419.)

An x-ray of Plaintiffs lumbar spine, taken May 1, 2014, showed disc space narrowing at L4-5 and L5-S1 with anterior marginal osteophytes, decrease in disc space height at L4-5 and L5-S1 and degenerative retrolisthesis of L4 onto L5. (Tr. 44.) That same day, an MRI of Plaintiff's lumbar spine showed increased herniation at L4-S1 level causing severe lateral recess stenosis and moderate central canal stenosis. (Tr. 46.)

On May 6, 2014, Dr. Winer noted increased lumbar stenosis and objective findings of lumbar and right leg radicular pain. (Tr. 352.) He administered lumbar epidural steroid injections at L4-5 and L5-S1. (Tr. 353.) On May 22, 2014, Plaintiff saw Dr. Winer with complaints of low back pain and neck pain with tingling into his right hand. (Tr. 423.) On examination Dr. Winer found tenderness in the paracervical area, restriction in head turning, some tingling and dysesthesia in the right forearm toward the thumb, lumbar tenderness, decreased range of motion with pain, positive straight leg test on the right, decreased muscle bulk in the right calf, and weakness in flexors. (Tr. 424.) Plaintiff reported that the epidural injections provided "good relief" for two to four days before the pain returned. (*Id.*) Dr. Winer recommended repeating the epidurals in three to four weeks and recommend a cervical MRI and x-rays. (Tr. 424-25.) On June 6, 2014, an MRI of Plaintiff's cervical spine showed "mild disc height loss at C5-C6 and C6-C7." (Tr. 345.) There was no spinal stenosis in the cervical spine. (*Id.*) That same day, an x-ray of Plaintiff's lumbar spine showed "moderate discogenic degenerative changes" at L5-S1 with "[s]light lower lumbar dextroscoliosis." (Tr. 346-47.)

At a July 22, 2014 appointment with Dr. Winer, Plaintiff complained of lower back pain and leg pain. (Tr. 348.) On examination Dr. Winer observed decreased lumbar range of motion, and decreased sensation in the right lower calf with atrophy. (*Id.*) Dr. Winer gave Plaintiff lumbar epidural steroid injections at L4-5 and L5-S1. (Tr. 349-50.)

During an August 14, 2014 appointment with Dr. Winer, Plaintiff complained of continued neck pain. (Tr. 425.) On examination Dr. Winer found cervical tenderness, decreased range of motion, decreased right bicep reflex, significant right bicep weakness, one-half inch of atrophy of the right forearm, and decreased sensation with upper arm extension. (Tr. 425-26.) On referral from Dr. Winer, on September 17, 2014, Plaintiff saw John Jones, M.D., for an evaluation of neck pain with numbness and tingling into his right arm. (Tr. 356.) On examination Dr. Jones found cervical tenderness over the left lower cervical pillar, abnormal cervical range of motion limited on the left lateral rotation, cervical pain with motion, reduced strength, and abnormal Spurling's maneuver. (Tr. 358.) Dr. Jones diagnosed cervical spondylosis, herniated nucleus pulposus, and right C6 radiculopathy. (Tr. 359.) Dr. Jones prescribed physical therapy for the cervical spine. (*Id*.)

On September 30, 2014, Dr. Winer performed lumbar decompression and lumbar fusion on Plaintiff. (Tr. 370-73.) In an October 24, 2014 note, Dr. Winer stated that an October 22, 2014 x-ray of Plaintiff's lumbar spine x-ray "look[ed] good." (Tr. 431.) In a November 2014 treatment note, Dr. Winer noted that Plaintiff was making progress but still complained of back pain. (*Id*.) On February 25, 2015, Dr. Winer noted that Plaintiff had made some progress but, at four months after surgery, Dr. Winer expected better range of motion and less lumbar pain. (Tr. 511.) Because of lack of progress noted on Plaintiff's x-ray, Dr. Winer ordered a bone growth stimulator. (*Id*.) During an April 16, 2015 appointment, Dr. Winer found limited mobility in Plaintiff's lumbar spine, and negative straight leg raising, except some hamstring tightness. (Tr. 509.) On June 3, 2015, Dr. Winer found tenderness at L4-5 and L5-S1, decreased lumbar range of motion, "possible delayed union of the fusion," and he noted that Plaintiff was making slow progress with a bone growth stimulator and physical therapy. (Tr. 510.) Dr. Winer recommended continued physical therapy. (*Id*.)

During a February 10, 2016 appointment with Dr. Winer, Plaintiff complained of low back pain, right buttock pain, right leg pain, SI joint pain, and persistent stiffness with limited range of motion. (Tr. 434.) On examination Dr. Winer observed that Plaintiff

"walk[ed] with apparent stiffness and mov[ed] in a protected fashion." (Tr. 436.) Plaintiff had a limited cervical range of motion, thoracic and lumbar paraspinal tenderness, SI joint tenderness, "minimal" muscle spasm in the right paraspinal area, limited flexion, focal pain in the right SI joint area with focal tenderness, and positive thigh thrust on the right. (*Id*.)

On February 24, 2016, an MRI of Plaintiff's cervical spine showed degenerative disc disease at C5-6, broad-based disc height, moderate bilateral foraminal stenosis, minimal central stenosis, broad-based central disc bulge with moderate bilateral foraminal stenosis at C6-7, and "no central stenosis." (Tr. 584.)

On June 9, 2016, Plaintiff saw Edward Song, M.D., and complained of worsening neck pain. (Tr. 578.) Plaintiff reported that recent epidural injections provided relief for a few days. (Tr. 578, 595, 603.) On examination, Dr. Song found diminished sensation in the left arm, diminished left grip strength, and diminished left bicep strength. (Tr. 580.) Dr. Song recommended a cervical discectomy and fusion to address Plaintiff's foraminal stenosis at C5-7. (*Id*.)

**B.    Examining Physicians' Opinions**

**1.    Terry McLean, M.D.**

On May 9, 2014, Dr. McLean conduced an independent medical examination of Plaintiff for the First Medical Advisory Group. (Tr. 34.) On examination Dr. McLean found that Plaintiff could heel and toe walk and perform a tandem gait. (Tr. 39.) Plaintiff had no tenderness in the cervical or thoracic spine. (*Id*.) Dr. McLean observed a "trace limp on the right side," a shallow knee bend, tenderness in the lower right foraminal area, bilateral lumbosacral tenderness, right sciatic notch tenderness, decreased lumbosacral range of motion, and positive slump test. (Tr. at 39-40.) Dr. McLean stated that Plaintiff had "progression in the size of herniation at the L4-5 level [that had] created more stenosis at the L4-5 level . . . and further injury to the disc." (Tr. 41.) Dr. McLean opined that Plaintiff was limited to lifting ten pounds but could "more frequently" lift five pounds. (Tr. 42.) Dr. McLean opined that Plaintiff should change positions at least every hour and could "walk upwards of a half hour." (*Id*.)

Dr. McLean examined Plaintiff again on December 1, 2015. (Tr. 25.) On examination Dr. McLean found decreased cervical range of motion, decreased lumbar range of motion, and decreased sensation in the nondermatomal distribution in his entire right leg. (Tr. 29-30.) Dr. McLean noted that Plaintiff's fusion was "solid" and there was "no further compression." (Tr. 32.) Straight leg raising test was negative and Plaintiff had full strength in all extremities. (Tr. 30-31.) Dr. McLean stated that there were "very little" objective findings. (Tr 32.) Dr. McLean opined that Plaintiff could lift up to forty pounds infrequently and "upwards of 15-20 pounds" "more frequently." (*Id.*) Plaintiff must change position "at least every hour with sitting and every 30 minutes with standing and walking." (*Id*.)

### 2. Michael Powers, M.D.

On June 12, 2015, Dr. Powers examined Plaintiff for a "disability evaluation" for the Corrections Officers Retirement Plan. (Tr. 439-42.) Plaintiff reported that after lumbar surgery in September 2014, his pain had decreased about 50% but the restrictions in his mobility were about the same. (Tr. 440.) On examination, Plaintiff was slow standing, turning, and walking. (Tr. 441.) Plaintiff had increased pain with bending, very limited back extension, pain with cervical rotation, decreased sensation in the right calf, and positive straight leg test on the right. (*Id.*)

### 3. Michael Winer, M.D.

On December 24, 2014, Dr. Winer completed a medical source statement. (Tr. 48-51.) He noted that Plaintiff was recovering from back surgery, and that he had some physical limitations due to low back pain and some leg pain. (Tr. 48.) Dr. Winer opined that Plaintiff could sit and stand for thirty minutes at a time up to two hours a day. (Tr. 49.) Plaintiff needed unscheduled breaks due to pain and numbness. (*Id*.) Plaintiff could rarely lift less than ten pounds. (Tr. 49-50.) Dr. Winer opined that Plaintiff's symptoms would interfere with his attention and concentration and cause him to be off task 25% or more during a workday. (Tr. 50.)

On February 10, 2016, Dr. Winer completed a "statement of work status." (Tr. 437.) He opined that Plaintiff could lift fifteen to twenty pounds occasionally and could lift forty pounds rarely. (Tr. 437.) He stated that Plaintiff should avoid repetitive lifting, bending, and stooping. (*Id*.) He also stated that Plaintiff needed to change position frequently and could not perform work overhead or below the knee. (*Id*.)

On February 23, 2016, Dr. Winer completed an "attending physician's statement." (Tr. 457-48.) He opined that, due to back pain and right SI joint pain, Plaintiff could not bend, kneel, or climb. (Tr. 458.) Plaintiff could lift fifteen pounds occasionally. (*Id.*) Plaintiff could not perform overhead reaching or below the knee work. (*Id*.)

On October 11, 2016, Dr. Winer completed a medical source statement. (Tr. 52-55.) Dr. Winer stated that due to neck pain, right arm pain, low back pain, right leg pain, buttock pain, and cervical radiculopathy, Plaintiff could sit for fifteen minutes at one time for a total of two hours in an eight-hour day, stand for fifteen minutes at one time, and walk for about fifteen minutes at a time for total of two hours in an eight-hour day. (Tr. 53.) Dr. Winer opined that Plaintiff needed to take unscheduled breaks due to pain, muscle weakness, and fatigue. (*Id*.) He found that Plaintiff could lift ten pounds occasionally. (Tr. 54.)

### 4. Edward Song, M.D.

On March 17, 2016, Dr. Song completed an "attending physician statement." (Tr. 461-62.) Dr. Song stated that based on neck pain, arm pain, limited left arm strength, and limited cervical range of motion, Plaintiff could never perform gross or fine manipulation with his left hand and could not reach on the left side. (Tr. 461-62.)

On September 15, 2016, Dr. Song completed a medical source statement. (Tr. 58-61.) Dr. Song opined that due to neck pain, left arm pain, left hand weakness, decreased left grip strength, and decreased bicep strength, Plaintiff needed to take unscheduled breaks every thirty minutes to an hour. (Tr.58-59.) Dr. Song opined that Plaintiff's symptoms would interfere with his attention and concentration and would cause him to be off task

more than 25% of the day. (Tr. 61.) He also opined that Plaintiff would miss at least three days of work per month due to his impairments or treatment. (*Id.*)

### III. The Administrative Hearing

Plaintiff was fifty years old as of the disability onset date. (Tr. 83.) He had a high school education and past relevant work as a loan officer, car sales person, and corrections officer. (Tr. 80, 91.) At the September 14, 2016 administrative hearing, Plaintiff testified that he left his job as a corrections officer in 2014 after he was injured on the job. (Tr. 93-94.) Plaintiff testified that he could not work because of problems and pain in his low back, neck, and right arm. (Tr. 95.) Plaintiff was scheduled for a cervical fusion in October 2016, after the administrative hearing. (*Id.*) Plaintiff testified that he had difficulty bending. (Tr. 95, 100.) Plaintiff testified that he had pain when sitting for more than thirty minutes, pain with standing, numbness down his right leg, and constant numbness in his right arm. (*Id.*) Plaintiff could walk "under a half mile." (Tr. 100.) Plaintiff's wife did the housework. (*Id.*) Plaintiff stated that every night pain woke him up at 1:00 a.m. and then he napped in a recliner to nap until spasms in his right side woke him up. (Tr. 96.) Plaintiff testified that he napped "constantly." (Tr. 100.)

At the administrative hearing, a vocational expert testified that an individual who could lift and carry twenty pounds occasionally, ten pounds frequently, required a sit/stand option, was allowed to change positions after one hour of sitting or thirty minutes of walking or standing, who could occasionally claim stairs, ramps, stoop, kneel, crouch and crawl, who could never climb ladders, ropes, and scaffolds, and who should avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery could not perform Plaintiff's past relevant work. (Tr. 102.) However, a person with those restrictions could perform other work. (*Id.*) The vocational expert testified that an individual who was limited to sitting two hours and standing or walking two hours in an eight-hour day would be unable to do any work. (Tr. 102-03.)

**IV. The ALJ's Decision**

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

**A. The Five-Step Sequential Evaluation Process**

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which he may be found disabled at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B. The ALJ's Application of the Five-Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 67.) At step two, the ALJ found that Plaintiff had "the following severe impairments: residuals of lumbar surgery, cervicalgia, and obesity. (20 CFR 404.1520(c))." (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (Tr. 68.)

The ALJ found that Plaintiff had the RFC "to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently)." (*Id*.) The ALJ added that Plaintiff needed a "'sit/stand option,' in which [Plaintiff could] sit, stand and/or walk for a total of eight hours in an eight hour day, exclusive of normal breaks, and with the option to be able to change positions after one hour of sitting or 30 minutes of working or standing, while remaining at the work station." (*Id*.) The ALJ found that Plaintiff could occasionally climb stairs and ramps, but could never climb ladders, ropes, or scaffolds. (*Id*.) Plaintiff could "occasionally stoop, kneel, crouch, and crawl." (*Id.*) Plaintiff should avoid concentrated exposure to . . . cold, unprotected heights, and moving or dangerous machinery." (*Id.*)

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work. (Tr. 79.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, he could perform other work that existed in significant numbers in the national economy. (Tr. 80.) Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through the date of his decision. (Tr. 81.) The ALJ denied Plaintiff's application for a period of disability and disability insurance benefits. (Tr. 82.)

### V. Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district

court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

## VI. Plaintiff's Claims

Plaintiff raises the following claims: (1) the ALJ erred by failing to accurately consider Listing 1.04 at step three of the sequential evaluation process; (2) the ALJ erred by rejecting the opinions of Dr. Winer, Plaintiff's treating physician; and (3) the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. 18 at 1.) The Commissioner asserts that the ALJ's decision is free from harmful error and is supported by substantial evidence. (Doc. 23.) As set forth below, the Court finds that any error in the ALJ's listing analysis was harmless, but the ALJ erred in rejecting Dr. Winer's February 2016 opinions and that error requires remand. Thus, the

Court does not consider whether the ALJ erred in his assessment of Dr. Winer's other opinions or whether he erred in assessing Plaintiff's testimony.

### A. The ALJ's Step Three Analysis

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation process by failing to adequately consider whether Plaintiff's impairment met or equaled Listing 1.04. (Doc. 18 at 10-11.) The Commissioner argues that even if the ALJ erred at step three, Plaintiff has not shown that a remand for further proceedings is appropriate. (Doc. 23 at 3-5.)

At step three of the sequential evaluation process, the ALJ determines if a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d). If a claimant shows that his impairment or combination of impairments meets or equals a listed impairment, he will be found presumptively disabled. *See* 20 C.F.R. §§ 416.925-416.926. An impairment meets a listed impairment if it satisfies all the criteria of that listed impairment. *See Sullivan Zebley*, 493 U.S. 521, 530 (1990); *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. *Tackett,* 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

"Although a claimant bears the burden of proving that [he] has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing." *Cunningham v. Astrue*, 2011 WL 5103760, at *3 (C.D. Cal. Oct. 27, 2011) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.")). Remand for further proceedings is appropriate when "an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case." *Cunningham,*

2011 WL 5103760, at *3 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (stating that a plaintiff must present a plausible theory as to how an impairment or combination of impairments equals a listed impairment)).

At step three, the ALJ stated that "[t]he medical evidence does not include evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04." (Tr. 68.) Plaintiff argues that the ALJ erred at step three because he inaccurately stated that the record did not include evidence of nerve root compression or lumbar spinal stenosis. (Doc. 18 at 10-11.) The Commissioner agrees that ALJ did not fully describe Plaintiff's lumbar impairment at step three of the sequential evaluation process. (Doc. 23 at 4.) However, the Commissioner argues that the error is harmless because other portions of the ALJ's decision accurately characterize Plaintiff's lumbar impairment. (*Id.*) The Commissioner further argues that remand is not appropriate because Plaintiff does not argue his lumbar impairment meets or equals Listing 1.04. (*Id.* at 3.)

The Court agrees with the Commissioner. Plaintiff asserts that the ALJ did not accurately consider Listing 1.04 but does not present a plausible theory as to how his impairment or combination of impairments meets or equals Listing 1.04. (Doc. 18 at 10-11.) Plaintiff does not identify the criteria of Listing 1.04 and, other than referring to evidence of stenosis and nerve impingement, does not explain how his impairment or combination of impairments meets or equals that listing. (*Id.* at 11 (citing Tr. 344).) Because Plaintiff has not offered a plausible theory as to how his combined impairments meet or are medically equivalent to the criteria for a listed impairment, the Court finds the ALJ's listing analysis was not an error that requires remand for further proceedings. *See Lewis*, 236 F.3d at 514; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

**B.  Medical Source Opinion Evidence**

Plaintiff asserts that the ALJ erred in rejecting the opinions of Dr. Winer, his treating physician. In weighing medical source opinion evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

- 13 -

examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion. *Id.* The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than opinions from treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631.

### 1. Dr. Winer's Opinions

Dr. Winer issued multiple assessments of Plaintiff's physical limitations. (Tr. 48-51, 52-55, 437, 457-58, 460, 462, 569, 640-43.) However, Plaintiff only challenges the ALJ's assessment of Dr. Winer's opinions in December 2014 and February 2016. (Doc. 18 at 12-15.) As set forth below, the Court concludes that the ALJ erred in his assessment of Dr. Winer's February 2016 opinions and that remand is required on that basis.

On February 10, 2016, Dr. Winer described Plaintiff's work status as "light duty." (Tr. 437.) Dr Winer stated Plaintiff could lift "15 to 20 pounds" occasionally, but could perform no repetitive lifting, bending, or stooping. (*Id.*) Dr. Winer stated that Plaintiff

must change position frequently and could not perform any work overhead or below the knees. (*Id.*) Dr. Winer stated that Plaintiff's work restrictions were "permanent." (*Id.*)

On February 23, 2016, Dr. Winer opined that Plaintiff could sit for one to two hours, for a total of four to six hours, stand for one to two hours, for a total of two to three hours, and walk for one hour for a total of one to two hours. (Tr. 458.) He also opined that Plaintiff could not bend, kneel, crouch, or climb. (*Id.*) Plaintiff could occasionally (defined as up to 2.5 hours) lift fifteen pounds but could not lift any amount of weight frequently or continually. (*Id.*) Plaintiff could reach above the shoulder occasionally, could perform gross and fine manipulation constantly, and could reach below the shoulder constantly. (*Id.*) However, Plaintiff could not perform "overhead" or "below the knee" work. (*Id.*) Dr. Winer stated that Plaintiff's limitations or restrictions were permanent. (*Id.*) In June 2016, Dr. Winer stated that Plaintiff's status was unchanged and that he continued to have "permanent light duty restrictions." (Tr. 569.)

The ALJ gave "some weight" to Dr. Winer's February 2016 opinions and his June 2016 statement. (Tr. 74.) The ALJ explained that he found Dr. Winer's opinion that Plaintiff could perform "a limited range of light work" was consistent with Dr. McLean's assessment in which Dr. Winer had concurred. (Tr. 74 (citing Admin. Hrg. Ex. 11F at 1-13).) The ALJ also found that Dr. Winer's opinion that Plaintiff could perform "light duty" was consistent with multiple examination findings. (Tr. 74.) The ALJ did not specifically reject any physical limitation that Dr. Winer assessed. (*Id.*) The ALJ assessed an RFC for "light work," which required "lifting and carrying 20 pounds occasionally and ten pounds frequently."[2] (Tr. 68 (citing 20 C.F.R. § 404.1567(b)).) Plaintiff argues that because "light work" as defined in the regulations requires the ability to frequently lift ten pounds, by adopting an RFC for light work, the ALJ implicitly rejected Dr. Winer's February 2016

---

[2] Title 20 C.F.R. § 1567(b) provides that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

- 15 -

opinions that Plaintiff could not perform any repetitive lifting.³ (Doc. 18 at 13 (citing 20 C.F.R. § 404.1567(b).)

Because Dr. Winer opined that Plaintiff could not lift any amount of weight repetitively, frequently, or continually (Tr. 437, 458), and light work requires frequent lifting or carrying of objects weighing up to ten pounds, *see* 20 C.F.R. § 404.1567(b), the ALJ mischaracterized Dr. Winer's February 2016 opinions as supporting an RFC for light work. Additionally, by adopting an RFC for light work as defined in 20 C.F.R. § 404.1567(b), the ALJ implicitly rejected Dr. Winer's February 2016 opinion that Plaintiff could not perform repetitive or frequent lifting. (Tr. 68.) The ALJ's decision cites examination notes as support for his finding that Plaintiff could perform light work. (Tr. 74.) However, the ALJ did not explain how any of those examination notes supported his rejection of Dr. Winer's conclusion that Plaintiff could not perform repetitive or frequent lifting.

## 2. The ALJ Erred by Rejecting Dr. Winer's Opinions

As noted above, the ALJ assessed an RFC for "light work" that required "lifting and carrying 20 pounds occasionally and ten pounds frequently." (Tr. 68.) This RFC was inconsistent with, and amounted to an implicit rejection of, Dr. Winer's February 2016 opinion that Plaintiff could not lift any amount of weight repetitively, frequently, or continually. (Tr. 437, 458.) The ALJ erred by failing to explain his implicit rejection of the lifting restrictions Dr. Winer assessed in his February 2016 opinions. Because Dr. Winer was a treating physician, the ALJ owed his opinion special deference. The

---

³ Plaintiff states that the ALJ "fail[ed] to address significant limitations in the June 8, 2016 assessment." (Doc. 18 at 13 (citing Tr. 74, 437).) Relying on this assertion, the Commissioner states that Plaintiff challenges Dr. Winer's June 2016 statement. (Doc. 23 at 11 (citing Doc. 18 at 13).) The Court finds that Plaintiff meant to refer to Dr. Winer's February 2016 assessment, not his June 2016 statement. Plaintiff cites to Tr. 437 to support his statement that the ALJ disregarded limitations in the June 8, 2016 assessment. (Doc. 18 at 13.) Page 437 of the administrative transcript is Dr. Winer's February 10, 2016 statement of work status. (Tr. 437.) The February 10, 2016 statement indicates that Plaintiff's next appointment was on June 8, 2016. (*Id.*) On June 8, 2016, Dr. Winer stated that Plaintiff's "work status remain[ed] unchanged with permanent light-duty restriction." (Tr. 569.) Dr. Winer did not assess any additional limitations in the June 8, 2016 statement. Thus, the Court concludes that on page 13 of his brief, Plaintiff meant to refer to "significant limitations" identified in the February 10, 2016 assessment.

ALJ's failure to set forth specific and legitimate reasons rejecting Dr. Winer's opinions was legal error. *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (finding that ALJ implicitly rejected treating physician's opinion by concluding that claimant could perform light work, and that ALJ's failure to evaluate the treating physician's findings or conclusions was legal error). The Court cannot conclude that this error was harmless because, as discussed in Section VII, the vocational expert's testimony suggests that an individual with the lifting restriction that Dr. Winer assessed would be unable to perform the jobs upon which the ALJ relied to find Plaintiff not disabled.

**VII. Remand for an Award of Benefits or Further Proceedings**

Based on the ALJ's error, the Court vacates the Commissioner's decision and may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, the court remands "to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, when "it is clear from the record that the claimant is unable to perform gainful employment in the national economy," "remand for an immediate award of benefits is appropriate." *Id.*

Under the Ninth Circuit's credit-as-true standard, courts may credit as true improperly rejected medical opinions or claimant testimony and remand for an award of benefits if each of the following conditions is satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1202). If the "credit-as-true rule" is satisfied, the court may remand for further proceedings, instead of for an award of benefits, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

The ALJ did not provide any reasons for his implicit rejection of Dr. Winer's opinions that Plaintiff could not perform any repetitive or frequent lifting. Plaintiff argues that if that opinion is credited as true, and combined with the "sit/stand option" included in the RFC, Plaintiff is limited to a sedentary RFC and that work is eliminated. (Doc. 18 at 18.) The Court disagrees and finds that it is not clear from the record that Plaintiff is entitled to benefits if Dr. Winer's February 2016 opinions are credited as true. *See Garrison*, 759 F.3d at 1019. The Court finds that "additional proceedings [could] remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

At the administrative hearing, the vocational expert testified that a person with the RFC that the ALJ assessed could perform work as a ticket taker, an order caller, or a silver wrapper.[4] (Tr. 101-02.) The ALJ relied on those three jobs to conclude that Plaintiff was not disabled under the Act. (Tr. 80-81.) The vocational expert characterized ticket taker, order caller, and silver wrapper as jobs that involved "light exertion." (Tr. 102.) The vocational expert testified that an individual who was limited to lifting nine pounds frequently could still perform those three jobs. (Tr. 102-03.) However, the vocational expert did not provide any testimony regarding whether an individual who was unable to lift any amount of weight frequently or repetitively could perform those jobs.

The Commissioner states that the none of jobs the ALJ relied on at step five indicate that Plaintiff would be required to lift repetitively. (Doc. 23 at 12.) However, the Commissioner only refers to two of the three jobs the ALJ cited, order caller and ticket taker. (*Id.*) Additionally, the Commissioner does not address the vocational expert's testimony that the three jobs—order caller, ticket taker, and silver wrapper—are "light

---

[4] The ALJ found that Plaintiff had the RFC "to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently)." (Tr. 68.) The ALJ added that Plaintiff needed a "'sit/stand option,' in which [Plaintiff could] sit, stand and/or walk for a total of eight hours in an eight hour day, exclusive of normal breaks, and with the option to be able to change positions after one hour of sitting or 30 minutes of working or standing, while remaining at the work station." (*Id.*) The ALJ found that Plaintiff could occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds. (*Id.*) Plaintiff could "occasionally stoop, kneel, crouch, and crawl." (*Id.*) Plaintiff should avoid concentrate exposure to . . . cold, unprotected heights, and moving or dangerous machinery." (*Id.*)

- 18 -

exertion" and thus, may require frequent lifting of up to ten pounds, as the vocational expert's testimony suggests. (*See* Tr. 102-03 (stating an individual who was limited to lifting nine pounds frequently could still perform work as an order caller, ticket taker, and silver wrapper).)

The Court concludes that further proceedings would be useful to reconsider Plaintiff's RFC in light to Dr. Winer's February 2016 opinion that Plaintiff could not perform repetitive or frequent lifting and to obtain vocational expert testimony regarding whether Plaintiff can perform other work that exists in the significant numbers in the national economy.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is remanded for further proceedings consistent with this Order.

Dated this 27th day of March, 2019.

Bridget S. Bade
United States Magistrate Judge